IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| TORREY LAMONT LOVE, | * |
| Plaintiff, | * |
|  | * |
| v. | * Civil Action No. RDB-13-1402 |
|  | * |
| WILLIAM ANTHONY RUMGAY, *et al.*, | * |
| Defendants. | * |
|  | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Torrey Lamont Love ("Plaintiff" or "Love") brings this 42 U.S.C. § 1983 action against Defendants William Anthony Rumgay ("Rumgay"), Wade Sibley ("Sibley"), Craig Miller ("Miller"), Charles Rankin ("Rankin") (collectively, "Defendants"), and unknown John Does, alleging violations of his rights under the Fourth and Fourteenth Amendments of the United States Constitution, U.S. Const. amends. IV, XIV. Specifically, Plaintiff claims that, during an allegedly unlawful traffic stop on June 1, 2010 in Allegany County, Maryland, and his ensuing detention, Defendants conspired to, and did, subject him to unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments. Furthermore, he alleges that Defendants used excessive force during the course of the alleged traffic stop.

Currently pending are Defendant Rumgay's Motion to Dismiss for Failure to State a Claim, or in the Alternative, Motion for Summary Judgment (ECF No. 74); Defendants Miller and Rankin's Motion to Dismiss for Failure to State a Claim (ECF No. 75); Defendant

Sibley's Motion to Dismiss (ECF No. 77); Plaintiff's Motion for Leave to File Surreply in Opposition to Defendants Miller and Rankin's Motion to Dismiss (ECF No. 89); and Plaintiff's Motion for Leave to File Surreply in Opposition to Defendant Rumgay's Motion to Dismiss (ECF No. 90). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014).

For the reasons that follow, Defendant Rumgay's Motion to Dismiss for Failure to State a Claim, or in the Alternative, Motion for Summary Judgment (ECF No. 74), construed as a Motion to Dismiss, is DENIED; Defendants Miller and Rankin's Motion to Dismiss for Failure to State a Claim (ECF No. 75) is DENIED; Defendant Sibley's Motion to Dismiss (ECF No. 77) is DENIED; Plaintiff's Motion for Leave to File Surreply in Opposition to Defendants Miller and Rankin's Motion to Dismiss (ECF No. 89) is GRANTED; and Plaintiff's Motion for Leave to File Surreply in Opposition to Defendant Rumgay's Motion to Dismiss (ECF No. 90) is GRANTED. In sum, Plaintiff has sufficiently alleged that Defendants violated his Fourth Amendment and Fourteenth Amendment rights to be free from unreasonable searches and seizures, as well as excessive force. At this early stage in the proceedings, Defendants have not yet demonstrated any entitlement to qualified immunity for their alleged actions. All counts thus remain pending against the Defendants. Discovery and pretrial dispositive motions will proceed per the parties' Joint Motion to Modify Scheduling Order (ECF No. 92).

BACKGROUND

This Court accepts as true the facts alleged in the plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). This action arises from an alleged unlawful

and unconstitutional search and seizure of the Plaintiff, Torrey Lamont Love. On June 1, 2010, Plaintiff and an acquaintance, Cristi Elliott ("Elliott"), were traveling in a white Cadillac on Interstate 68. Second Amend. Compl. ¶ 26, ECF No. 73. Although the car was registered to Love and his wife, Elliott was driving and Love rode in the passenger seat. *Id.* ¶ 26. Shortly after the car came into view,[1] Defendants Craig Miller and Charles Rankin, Maryland State Troopers,[2] allegedly turned on their lights and siren to signal the car to stop. *Id.* ¶ 27. Once Elliott pulled over the vehicle, Miller exited his patrol car and approached the passenger side of the Cadillac. *Id.* ¶ 28. Miller informed Elliott that she had violated the speed limit by traveling seventy-three miles per hour in a sixty-five mile per hour zone. *Id.* ¶ 28. Plaintiff disputes the legitimacy of this justification, asserting that Miller and Rankin had neither "reasonable articulable suspicion [n]or probable cause to believe that the car was speeding." *Id.* ¶ 27.

Miller began to question Love and Elliott. *Id.* ¶ 29. A video recording of the interrogation allegedly shows that the questions included:

> where [Elliott] and Mr. Love were coming from; . . . where they were going; . . . where Ms. Elliott lived; . . . details regarding a prior traffic stop; . . . who owned the car; . . . where the two had spent the day; . . . whether Ms. Elliott and Mr. Love were related; and . . . for Mr. Love's identification."

*Id.* Plaintiff answered each question posed. *Id.* He alleges that the bulk of the questions

---

[1] Plaintiff alleges that the video recording of the incident shows that only twenty seconds passed between the moment the car came into view and the point at which Defendants Miller and Rankin turned on their siren. *Id.* ¶ 27.

[2] In the Second Amended Complaint, Plaintiff identified Defendants Miller and Rankin as officers of the Cumberland City Police Department. *Id.* ¶¶ 20. 21. Miller and Rankin, however, assert that they are Maryland State Troopers. Mem. in Support of Defs. Miller and Rankin's Mot. to Dismiss, 1 n.1, ECF No. 75-1. Plaintiff does not dispute Miller and Rankin's correction, thus this Court will refer to Miller and Rankin as state troopers.

concerned matters outside of the scope of the traffic violation, effectively prolonging the traffic stop beyond the time needed to complete an investigation. *Id.* ¶ 31.

Miller and Rankin subsequently returned to their vehicle, where Miller was recorded to have said to Rankin that he had "probable cause for a [K-9] scan." *Id.* ¶ 32. After discussing whether Defendant Wade Sibley was nearby, Miller stated, "[Sibley] can go ahead and do the [K-9] scan. I've got both IDs here. This name has been on cars I've stopped before and found narcotics." *Id.* Miller then requested assistance for a scan on his radio. *Id.* ¶ 34. Sibley, an officer with the Allegany County Sheriff's Office or Cumberland City Police Department, *id.* ¶ 19, arrived soon thereafter. *Id.* ¶ 34.

Defendants ordered Elliott to exit the Cadillac and stand by Miller's trooper vehicle, which was parked "some distance away" from the Cadillac. *Id.* ¶ 35. Also on Defendants' orders, Love remained in the vehicle. *Id.* Defendant William Rumgay, an officer with the Allegany County Sheriff's Office or Cumberland City Police Department,[3] *id.* ¶ 18, then arrived at the scene. *Id.* ¶ 36. Sibley proceeded to walk with his service dog towards the Cadillac, passing Elliott on the way. *Id.* ¶ 37. Love alleges that the dog did not alert when close to Elliott. *Id.* Sibley circled the Cadillac with the dog, at which point the dog allegedly alerted to the presence of narcotics on the passenger side of the car. *Id.* ¶ 38. Sibley and the dog again approached Elliott, but the dog did not alert to the presence of narcotics on Elliott. *Id.* ¶ 39.

After Sibley's service dog alerted near the Plaintiff, Miller ordered Plaintiff to exit the Cadillac. *Id.* ¶ 40. Six Defendants, including Miller, Rankin, and Rumgay, allegedly

---

[3] Neither Defendant Sibley's nor Defendant Rumgay's exact employer has been defined.

surrounded Love. *Id.* The video recording reveals that Miller asked Plaintiff, "[a]nything in your anus?" *Id.* ¶ 41. Love responded, "No. Listen, I don't stick nothing in my ass." *Id.* Love was ordered to remove his shoes and subjected to a search of his person." *Id.* ¶ 42. The search allegedly revealed that Plaintiff possessed no "contraband or other evidence of criminal conduct on his person or otherwise within reach." *Id.* ¶ 43. Nevertheless, Miller allegedly ordered Plaintiff to walk down the road, without his shoes, to Miller's vehicle. *Id.* Plaintiff cooperated, following Rankin to the vehicle. *Id.* ¶¶ 43, 45. Rankin handcuffed Love's hands behind his back. *Id.* ¶ 43. An unknown Defendant then "grabbed Mr. Love by the back of his head and slammed his face into the police car, causing pain and discomfort to Mr. Love." *Id.* ¶ 44.

Over the next twenty-five minutes, Defendants Miller and Rumgay searched the entire Cadillac. *Id.* ¶ 46. During the search, Rumgay was recorded as saying to Miller, "It's in here, Craig, I got a feeling." *Id.* Miller responded, "I would hope so." *Id.* Defendants never found narcotics, contraband, or any evidence of a crime in the Cadillac. *Id.* ¶ 52.

While the search continued, Rumgay paused to question Elliott briefly, but soon resumed his search of the Cadillac. *Id.* ¶ 47. None of the Defendants searched or frisked Elliott at the scene of the incident, although a female officer was present. *Id.* ¶¶ 48-49. An unnamed officer brought a service dog within feet of Elliott, but again, the dog did not alert to the presence of narcotics. *Id.* ¶ 50. While Plaintiff was present at the scene of the incident, Elliott was never handcuffed. *Id.* ¶ 51. At some later time, unspecified Defendants took her to the Allegany County Detention Center, where a search revealed eighty-four capsules of suspected heroin, fifty vials of suspected crack cocaine, and two clusters of suspected crack

cocaine. *Id.* ¶ 54. Elliott allegedly admitted that the narcotics belonged to her alone, as Love had no knowledge of the narcotics. *Id.*

Later that day, Rumgay allegedly swore to a "Statement of Probable Cause" and a "Statement of Charges" in *State of Maryland v. Torrey Lamont Love*, District Court Case No. 4W00054527 (2010). *Id.* ¶ 55. In the "Statement of Probable Cause," Rumgay stated that he was "able to determine . . . [that Mr.] Love and [Ms.] Elliott conspired with each other to distribute crack cocaine and . . . heroin." *Id.* ¶ 56. Rumgay went on to explain that he was "able to determine . . . [that Mr. Love and Ms. Elliott] possessed the crack cocaine and heroin . . ." and that he observed "a large bulge on the left front thigh area of [Ms. Elliott's] leg." *Id.* ¶¶ 57-58. Love alleges that neither the video recording nor the contemporaneous radio transmissions indicated such an observation, as Defendants did not "pat down" Elliott or question her about the "bulge." *Id.* ¶ 58. Love asserts that the statements were false and made with a reckless disregard for the truth. *Id.* ¶¶ 56-58. Through the "Statement of Charges," Love was charged with possession of controlled dangerous substances and conspiracy to possess controlled dangerous substances. *Id.* ¶ 55.

Plaintiff remained in detention after his initial arrest on June 1, 2010. On the basis of Rumgay's testimony in the "Statement of Probable Cause," Plaintiff was detained without bond on July 2, 2010. *Id.* ¶¶ 59-60. A preliminary hearing in the District Court of Maryland for Allegany County ensued. *Id.* ¶ 61. Love claims that Rumgay testified to the same falsehoods of the "Statement of Probable Cause." *Id.* ¶ 61. Rumgay also allegedly stated that Elliott was in the vehicle when Sibley's service dog alerted. *Id.* The presiding judge found probable cause to continue to hold Plaintiff and set bail at $200,000. *Id.* ¶ 62.

Later that month, Michael Twigg, the State's Attorney for Allegany County, filed a Criminal Information charging Plaintiff with all nine counts recommended by Defendant Rumgay in the "Statement of Charges." *Id.* ¶ 64. On November 3, 2010, the State's Attorney entered a *nolle prosecui* on all charges.[4] *Id.* ¶ 65. Unable to make bail, Plaintiff remained incarcerated from his initial arrest on June 1, 2010, until his release on November 3, 2010. *Id.* In sum, he spent 156 days at the Allegany County Detention Center. *Id.*

Although Love originally filed the subject action *pro se*, this Court appointed *pro bono* counsel on January 1, 2014. Order, ECF No. 25. Under the direction of his present counsel, Plaintiff filed the Second Amended Complaint (ECF No. 73) on July 10, 2015. Defendants Rumgay, Miller, Rankin, and Sibley subsequently moved for dismissal of the Second Amended Complaint in its entirety. *See* Def. Rumgay's Mot. to Dismiss, ECF No. 74; Defs. Miller and Rankin's Mot. to Dismiss, ECF No. 75; Def. Sibley's Mot. to Dismiss, ECF No. 77. Finally, Love filed the pending Motions for Leave to File Surreply in Opposition (ECF Nos. 89 & 90), arguing that Defendants Miller, Rankin, and Rumgay raised certain arguments in their respective Replies (ECF Nos. 87 & 88) that were absent from the original Motions to Dismiss.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The

---

[4] Pursuant to Maryland Rule 4-247, an entry of *nolle prosecui* is a voluntary dismissal by the prosecutor of all charges against the defendant. Md. Code Ann., Md. Rule 4-247.

purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC*, 680 F.3d at 365 (internal quotation marks omitted).

## ANALYSIS

Plaintiff Love's Second Amended Complaint asserts four federal causes of action against the Defendants, all pursuant to 28 U.S.C. § 1983—unreasonable and unlawful seizure (Count One); excessive force (Count Two); unreasonable and unlawful search (Count Three); and conspiracy to violate constitutional rights (Count Four). In their respective Motions to Dismiss, Defendants Rumgay, Miller, Rankin, and Sibley argue that, even with the additional detail provided by the Second Amended Complaint, Love fails to state a plausible claim for relief. Alternatively, the Defendants assert that they are entitled to qualified immunity for any and all acts stemming from the incident. This Court will address the issues raised by the parties in the following manner. First, although not chronological, this Court will consider Plaintiff's Motions for Leave to File Surreply (ECF Nos. 89 & 90). Second, this Court will examine the allegations of Count One as applied to Defendants Miller, Rankin, and Sibley. Third, this Court will consider Count One as applied to

Defendant Rumgay. Fourth, this Court will examine each remaining count as applied to all Defendants. Finally, this Court will address the merits of Defendants' affirmative defense of qualified immunity.

## I.      Plaintiff's Motions for Leave to File Surreply

Plaintiff requests leave to file two surreplies—the first in response to Defendants Miller and Rankin's Reply (ECF No. 87), and the second in response to Defendant Rumgay's Reply (ECF No. 88).[5] As a general rule, this Court will not allow parties to file surreplies. Local Rule 105.2(a) (D. Md. 2011); *see also MTB Servs., Inc. v. Tuckman-Barbee Const. Co.*, No. 1:12-cv-02109-RDB, 2013 WL 1224484, *6 (D. Md. Mar. 26, 2013). In *MTB Services*, this Court explained that a "party moving for leave to file a surreply must show a need for a surreply." *Id.* (internal citation omitted).  A court may permit a plaintiff to file a surreply if "a defendant raises new legal issues or new theories in its reply brief." *Id.* (citing *TECH USA, Inc. v. Evans*, 592 F. Sup.. 2d 852, 862 (D. Md. 2009)); *see also Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003).

Love contends that Defendants' respective replies raised arguments absent from their earlier Motions to Dismiss. Specifically, Defendants Miller and Rankin argued that Love's arrest was supported by probable cause, while Defendant Rumgay claimed that Love had failed to allege that Rumgay's "false statements" were material to the judicial determination of probable cause and detention. Plaintiff does not merely reiterate arguments asserted in opposition to Defendants' respective Motions to Dismiss. After a review of Defendants' replies, this Court holds that the Defendants did, indeed, raise the novel arguments identified

---

[5] Defendant Sibley, who joined in Miller and Rankin's Motion to Dismiss (ECF No. 77) did not file a Reply, nor did he join Miller and Rankin's Reply.

by the Plaintiff. Absent the subject surreplies, Love has no means through which he may dispute the newly-asserted arguments. Given this prejudice, he has demonstrated the requisite need for a Surreply. Accordingly, Plaintiff's Motions for Leave to File Surreply (ECF Nos. 89 & 90) are GRANTED.

## II.     Count One—Unreasonable and Unlawful Seizure

### A.  Defendants Miller, Rankin, and Sibley

Plaintiff alleges that he suffered two specific unreasonable and unlawful seizures, in violation of the Fourth and Fourteenth Amendments. First, he claims that the initial investigatory stop was unsupported by reasonable suspicion or probable cause of any criminal activity. Even if the initiation of the stop satisfied the Fourth Amendment, Defendants prolonged the investigatory stop beyond its constitutional bounds. Second, Love alleges that his later arrest and detention were unsupported by probable cause, and thus unreasonable and unlawful under the Fourth Amendment. Each alleged seizure will be addressed in turn.

Section 1983 creates a private right of action for any United States citizen seeking to remedy alleged constitutional violations. 42 U.S.C. § 1983. Under Section 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Section 1983 does not create "substantive rights;" rather, it provides "a method for vindicating federal rights elsewhere conferred." *Thompson v. Dorsey*, Civ. A. No. ELH-10-1364, 2011 WL 2610704, at *3 (D. Md. June 30, 2011) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

In Count One, Love specifically alleges that, due to Defendants' actions, he was unreasonably and unlawfully seized under the Fourth Amendment. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As the United States Court of Appeals for the Fourth Circuit has emphasized, the "underlying command of the Fourth Amendment is always that searches and seizures be reasonable." *United States v. Digiovanni*, 650 F.3d 498, 506 (4th Cir. 2011) (quoting *Wilson v. Arkansas*, 514 U.S. 927, 931 (1995)).

Although a seizure may arise in many forms, it is clearly established that persons traveling in an automobile who are stopped and detained, however briefly, by a police officer are seized within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10. As such, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. So long as probable cause of a traffic violation is present, "[a]ny ulterior motive a police officer may have for making the traffic stop is irrelevant." *Digiovanni*, 650 F.3d at 506 (citing *Whren*, 517 U.S. at 813; *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)). The seizure begins when the vehicle "is pulled over for investigation of a traffic violation." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). For the "duration of the stop . . . a police officer effectively seizes 'everyone in the

vehicle,' the driver and all passengers." *Id.* at 327 (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007)).

As "most traffic stops resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry* [*v. Ohio*]," and not custodial arrests, the Supreme Court has instructed that such stops be considered under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *Berkemer v. McCarty*, 468 U.S. 420, 439 n. 29 (1984); *accord Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (*per curiam*); *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992); *Digiovanni*, 650 F.3d at 506. To be reasonable, the traffic stop must satisfy two prongs. First, the police officer's decision to stop the automobile must be "justified at its inception." *Digiovanni*, 650 F.3d at 506. Second, the officer's "subsequent actions [must be] reasonably related in scope to the circumstances that justified the stop." *Id.*

With respect to Defendants Miller, Rankin, and Sibley, Plaintiff has sufficiently alleged that the traffic stop was not justified at its inception. Defendants argue that Plaintiff plainly admits a traffic violation occurred, thereby justifying the seizure of the vehicle.[6] Yet, Plaintiff does no such thing in the Second Amended Complaint. Far from admitting a traffic violation, Love acknowledges only that Miller and Rankin's professed reason for the stop was a traffic violation. He alleges that no such violation occurred. In support of this allegation, he claims that Miller and Rankin the twenty-second interval between when the vehicle came into view and Defendants' signal was insufficient to determine whether Elliott was indeed speeding.

---

[6] This Court notes that only Miller and Rankin were present at the initial stop of the vehicle, whereas Sibley was in a separate vehicle at a close, but unknown, distance. Since Sibley joined in Miller and Rankin's Motion to Dismiss, and has not asserted any grounds for dismissal specific to his actions, this Court will consider Miller and Rankin's arguments as encompassing Sibley.

The parties have presented conflicting versions of the initial stop. The issue of probable cause of a traffic violation could be ripe for consideration after the parties engage in discovery, or may continue to present genuine issues of fact to be resolved at trial. At the motion to dismiss stage, however, this Court must accept as true the facts alleged by Love in the subject Second Amended Complaint. *See Aziz*, 658 F.3d at 390. This Court thus must accept Love's allegation that no traffic violation occurred, despite the Defendants' statements to the contrary. As the alleged seizure fails the first prong of the *Terry* framework, this Court need not consider whether Defendants' "subsequent actions were reasonably related in scope to the circumstances that justified the stop. *Digiovanni*, 650 F.3d at 506.

Turning next to Plaintiff's arrest and ensuing five-month detention, Defendants Miller, Rankin, and Sibley argue that they were not involved in the arrest and detention, and thus may not be held liable. Even if Plaintiff's allegations demonstrate their participation, they contend that his arrest and detention were supported by probable cause. Under the Fourth Amendment, a police officer need not obtain a warrant before arresting an individual if he has probable cause to believe the individual committed a crime. *See, e.g.*, *United States v. Watson*, 423 U.S. 411, 421-23 (1976); *Hayes v. Florida*, 470 U.S. 811, 816 (1985). Probable cause is admittedly a "practical, nontechnical conception." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). Courts thus employ a "totality-of-the-circumstances" test to determine whether law enforcement had probable cause to arrest the individual in question. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983).

In this case, Defendants do not dispute that Plaintiff was arrested without the authority of a warrant. Nor do they dispute that he was seized and arrested within the

understanding of the Fourth Amendment. Rather, they argue that their interactions with the Plaintiff were limited to the initial traffic stop and K-9 investigation. The Second Amended Complaint, however, clearly alleges the participation of Defendants in Love's detention. Defendant Miller allegedly forced Love to remove his shoes and conducted a search of his body. Second Amend. Compl. ¶¶ 42-43. Similarly, Defendant Rankin allegedly accompanied Love to the rear of Miller's police vehicle, at which point he handcuffed Love. *Id.* ¶¶ 40, 43. Throughout the seizure and official arrest, Sibley, Miller, and Rankin are alleged to have acted in concert with Rumgay and the unnamed Defendants. Plaintiff has sufficiently alleged that Defendants participated in his arrest.

Alternatively, Defendants argue that Love's arrest was supported by ample probable cause, and thus inherently reasonable under the Fourth Amendment. Specifically, Defendants assert that Plaintiff's purported ownership of the Cadillac, Miller's statement that he had seen "the name" on cars associated with narcotics, and the service dog's alert on the passenger side of support a finding of probable cause. It is the allegations of the Second Amended Complaint, however, that control at the motion to dismiss stage.

Although Plaintiff admits that the Cadillac was registered to he and his wife, he does not allege that he *owns* the car. Further, Miller's statement does not refer specifically to Love, but may plausibly refer to Elliott, the person on whose person narcotics were actually found. Finally, while the positive alert of a service dog does provide probable cause to search the vehicle, that alert does not establish probable cause to arrest a specific individual. *United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004). Some "additional factors would generally have to be present, indicating to the officer that those persons possess the

contraband." *Id.* Plaintiff alleges that no such "additional factors" were present, as no drugs were found on his person, nor in the vehicle. His allegations are sufficient to plead a plausible claim that Defendants arrested him without probable cause, in violation of his Fourth Amendment rights. After discovery, Defendants will have an opportunity to challenge Plaintiff's version of the circumstances underlying his arrest and subsequent detention. Accordingly, Count One will proceed as applied to Defendants Miller, Rankin, and Sibley.

### B. Defendant Rumgay

Plaintiff alleges that Defendant Rumgay was a willing actor in the scheme to subject the Plaintiff to unreasonable and unlawful seizure, in violation of the Fourth Amendment. Rumgay allegedly participated in the unreasonable and unlawful searches and seizures at the scene of the traffic stop, but subsequently gave allegedly false statements that were material to Plaintiff's continued detention. To the extent that Rumgay is included in Plaintiff's claims against Miller, Rankin, and Sibley, the claims will proceed for the reasons discussed *supra*. The allegations specific to Rumgay—his allegedly false statements—require further analysis.

Love alleges that Rumgay made false statements on two occasions—his statements in the "Statement of Probable Cause" and "Statement of Charges" on June 1, 2010, and his testimony at the preliminary hearing on July 2, 2010. Section 1983 incorporates common law torts, such as false imprisonment, so as to create a "'special species of tort liability,' founded on rights originating in the Constitution[.]" *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). Section 1983 claims for false imprisonment are thus "properly analyzed as unreasonable seizures under the Fourth

Amendment." *McPhearson v. Anderson*, 873 F. Supp. 2d 753, 756 (E.D. Va. 2012) (quoting *Day v. Milam*, Civ. A. No. 1:11-cv-97, 2011 WL 5190809, at *4 (E.D. Va. Oct. 28, 2011)). If a plaintiff alleges that police officers seized him "pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor," then he has sufficiently stated a claim for unreasonable seizure under the Fourth Amendment. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996); *see also Miller v. Prince George's County*, 475 F.3d 621, 630 (4th Cir. 2007).

In this case, Love's allegations are sufficient to plead a plausible violation of his Fourth Amendment rights. Love claims that the story upon which his arrest and subsequent imprisonment was based was fabricated by Defendant Rumgay. Plaintiff alleges that Rumgay had no evidence of a conspiracy between he and Elliott to possess and distribute narcotics, but falsely stated that such evidence existed. According to the Second Amended Complaint, no narcotics were ever found on Plaintiff's person or in the car. Rumgay, however, stated that he was "able to determine . . . [that the Plaintiff] possessed the crack cocaine and heroin[.]" Second Amend. Compl. ¶ 57. At the July 2, 2010 preliminary hearing, Rumgay again presented testimony that contradicted Love's factual allegations. If true, Love's allegations demonstrate a false foundation for his continued detention, thereby negating Rumgay's assertion of probable cause. Furthermore, the criminal proceedings against Love terminated in his favor when the Office of the State's Attorney entered a *nolle prosecui* dismissing all charges.

Raised for the first time in his Reply, Rumgay asserts that he is entitled to qualified immunity for any such statements because Love failed to allege that the omission of the false

statements would negate a finding of probable cause.[7] Under the framework of *Franks v. Delaware*, 438 U.S. 154 (1978), Love must demonstrate "that a false statement knowingly and intentionally or with reckless disregard for the truth was included by the affiant in the affidavit," and that "the information was essential to the probable cause determination." *Smith v. Reddy*, 882 F. Supp. 497, 499 (D. Md. 1995). As discussed *supra*, Plaintiff has clearly alleged that Rumgay knowingly and intentionally (or with reckless disregard) made false statements. Despite Rumgay's argument to the contrary, Plaintiff also expressly alleged that the statements were material to the judicial finding of probable cause for detention. Defendant's argument essentially ignores the allegations of the Second Amended Complaint. Accordingly, Plaintiff has sufficiently pled a plausible claim for relief under the Fourth Amendment. At this early stage, Defendant has failed to demonstrate any entitlement to qualified immunity for the alleged false statements.

## III.        Count Two—Excessive Force

In Count Two, Plaintiff alleges that Defendants used excessive force during their encounter with the Plaintiff. When the alleged excessive force "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment[.]" *Graham v. Connor*, 490 U.S. 386, 394 (1989); *accord Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). To determine the reasonableness of the force employed, the Fourth Amendment "requires a careful balancing of the 'nature and quality of the intrusion on the individual's Fourth Amendment interests' against the

---

[7] Generally, a party waives any argument not asserted in an opening brief. *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 735 (D. Md. 2006) (internal citation omitted). In Plaintiff's Motion for Leave to File Surreply (ECF No. 90), he addresses the newly-raised argument of materiality. As Plaintiff's surreply is to be granted, this Court will consider Defendant's argument for qualified immunity.

'countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983))). The application of this test is ill-suited for rigid application, thus "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

As set forth in the Second Amended Complaint, Defendants allegedly "stripped Mr. Love of his shoes, grabbed him behind his head while he was handcuffed, and forcefully slammed his face against the police car." Second Amend. Compl. ¶ 82. Plaintiff alleges that, as he was barefoot on the side of a highway surrounded by officers, he hardly posed a threat to the safety of the officers. No narcotics nor weapons were found during the search of the Cadillac. No weapons or narcotics were discovered on Love's person. Moreover, he made no attempt to resist or evade arrest. Such allegations are sufficient to plead a claim for excessive force under the Fourth Amendment.

Although Defendants briefly argue, incorrectly, that some proof of injury is a prerequisite for an excessive force claim,[8] their primary argument concerns Plaintiff's failure to name the particular perpetrator of the alleged force. Defendants assert that, absent this information, they cannot be held liable for any claim of excessive force. This argument, however, essentially asks the Plaintiff to *prove* his claim before he has the opportunity to

---

[8] *See Graham*, 490 U.S. at 390-92 (rejecting the lower courts' application of a standard that required proof of injury to establish excessive force, and instead holding that the "objective reasonableness" standard of the Fourth Amendment applies to such claims).

conduct discovery. At the motion to dismiss stage, a plaintiff is under no such obligation. An excessive force claim requires a fact-intensive inquiry, but this inquiry is not properly conducted on a defendant's motion to dismiss. *See Graham*, 490 U.S. at 396; *accord Brown v. Prince George's Cnty., Md.*, Civ. A. No. DKC-07-2591, 2012 WL 3012573, at *6 (D. Md. July 20, 2012) (internal citations omitted). As such, Defendants' respective Motions to Dismiss are DENIED as to Count Two.

## IV.    Count Three—Unreasonable and Unlawful Search

In Count Three, Love alleges that Defendants' search of the Cadillac and ensuing search of his person violated his right under the Fourth Amendment to be free from unreasonable search. The United States Supreme Court has repeatedly emphasized that "the mandate of the (Fourth) Amendment requires adherence to judicial processes[.]" *United States v. Jeffers*, 342 U.S. 48, 51 (1951). As such, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).

It is undisputed that Defendants did not adhere to the judicial process by securing a warrant to search the Cadillac and Plaintiff. Instead, they contend that both searches fell under such "specifically established and well-delineated exceptions" to the warrant requirement anticipated by *Katz* and its progeny. With respect to the search of the Cadillac, Defendants assert that the "automobile exception" authorized the search because they had "probable cause to believe that the vehicle contain[ed] contraband." *United States v. Ross*, 456 U.S. 798, 808 (1982) (citing *Carroll v. United States*, 267 U.S. 132, 156 (1925)). The

"automobile exception," unlike the other exceptions to the warrant requirement, does not require the existence of exigent circumstances. *United States v. White*, 549 F.3d 946, 949 (4th Cir. 2008). Stemming from the inherent mobility of an automobile, this exception simply demands that probable cause of contraband be established prior to search. *Id.* (citing *Ross*, 456 U.S. at 800).

Defendants argue that the positive alert of the service dog provided the requisite probable cause to search the vehicle. The mere sniffing of the perimeter of a lawfully-stopped vehicle by a trained narcotics dog does not trigger the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 409-10 (2005); *see also United States v. Jeffus*, 22 F.3d 554, 557 (4th Cir. 1994) (citing *United States v. Place*, 462 U.S. 696, 707 (1983)). When the dog alerts to the presence of drugs, then the officer has probable cause to search the vehicle. *United States v. Robinson*, 707 F.2d 811, 815 (4th Cir. 1983); *accord Jeffus*, 22 F.3d at 557.

Defendants' reliance on the automobile exception fails on two grounds. First, as discussed *supra*, Plaintiff specifically alleges that a traffic violation had not occurred, thus the Cadillac was not lawfully stopped. Implicit in the narcotics dog analysis is the legality of the initial stop. *See Caballes*, 543 U.S. at 409-10. Second, the Second Amended Complaint alleges that Sibley's service dog was inadequately trained, and thus unreliable. While the alert of a "*well-trained* narcotics-detection dog" may provide probable cause for a search, *id.* at 410, the "drug dog's positive alert for contraband must possess some indicia of reliability[.]" *United States v. Wu*, 217 F. App'x 240, 245 (4th Cir. 2007) (citing with approval *United States v. Kennedy*, 131 F.3d 1371, 1376-77 (10th Cir. 1997)). The subject of that search thus is entitled to "an opportunity to challenge [the] evidence of a dog's reliability." *Florida v. Harris*, 133 S.

Ct. 1050, 1057 (2013). In support of his claim, Love alleges that Sibley's drug dog did not alert when it approached Ms. Elliott, who was later found to be carrying narcotics. Even further, no narcotics were ever found in the vehicle, thereby negating, Love argues, the dog's positive alert. At this early stage, Love has sufficiently pled that Defendants did not have probable cause to search the Cadillac. He is entitled to challenge the reliability of the narcotics dog.

Plaintiff has also alleged a plausible claim that the search of his person violated the Fourth Amendment. First, to the extent Defendants argue that the dog alert also provided probable cause to search the Plaintiff, the allegations of unreliability noted *supra* must be explored further in discovery. Moreover, the positive alert, even if reliable, provided probable cause to search the vehicle, but not probable cause to search the Plaintiff. *Caballes*, 543 U.S. at 409-10.

Alternatively, Defendants appear to argue that Love was searched incident to a lawful arrest. Under the "search incident to a lawful arrest" exception to the warrant requirement, "a search may be made of the person of the arrestee by virtue of the lawful arrest." *United States v. Robinson*, 414 U.S. 218, 224 (1973). Necessary to this exception, however, is that the individual in question was lawfully arrested. It is well established that a police officer may arrest an individual without a warrant when he has probable cause that the suspect "has committed, is committing, or is about to commit an offense." *Michigan v. DeFilippo*, 443 U.S. 31, 37 (1979); *accord United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004); *Maryland v. Pringle*, 540 U.S. 366 (2003). In this case, Plaintiff contends that his arrest was unsupported by probable cause. The Second Amended Complaint specifically alleges that the Defendants

found no contraband when searching the vehicle, nor did they have any other articulable reasons to suspect that Love was engaged in criminal activity. *See supra* II.A. Even if Defendants had probable cause to believe that the Cadillac contained contraband, "additional factors must be present" to connect that contraband to probable cause to arrest the Plaintiff. *Humphries*, 372 F.3d at 659 (explaining that "[w]hile the odor of marijuana provides probable cause to believe that marijuana is present, the presence of marijuana does not of itself authorize the police either to search any place or to arrest any person in the vicinity."). Since Plaintiff has sufficiently pled that his arrest was not supported by probable cause, the Defendants may not use the "search incident to lawful arrest" doctrine to dismiss his claim.

Moreover, the Second Amended Complaint makes clear that both searches stemmed from the unreasonable seizure of the Cadillac. An unreasonable seizure is not considered in isolation, but rather "taint[s] all that ensued in the investigative encounter[.]" *United States v. Gooding*, 695 F.2d 78, 84 (4th Cir. 1982). Since Defendants were allegedly engaged in an unconstitutional seizure when they allegedly search the Cadillac and Love's person, they also violated Love's Fourth Amendment right to be free from unreasonable searches.

In sum, the Second Amended Complaint plausibly alleges that Defendants violated Love's Fourth Amendment right to be free from unreasonable searches. Defendants' respective Motions to Dismiss are thus DENIED as to Count Three.

## V.        Count Four—Conspiracy to Violate Constitutional Rights

It is alleged in Count Four that Defendants "entered into an agreement, between and among themselves, to act in concert for the purpose of depriving Mr. Love of his right to be

free from unreasonable searches and seizures and to be free from the use of excessive force[.]" Second Amend. Compl. ¶ 100. "To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996). Towards this end, there must be a showing that the defendants entered into some sort of an agreement, whether positive or tacit, to deprive the plaintiff of a constitutional right. *Id.*; *see also Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) (explaining that a successful conspiracy claimant must "show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights"). Courts have held plaintiffs to a relatively stringent standard in assessing whether a conspiracy claim has been properly alleged. *See Gooden v. Howard County*, 954 F.2d 960, 969-70 (4th Cir. 1992) ("To avoid evisceration of the purposes of qualified immunity, courts have [] required that plaintiffs alleging unlawful intent in conspiracy claims under . . . § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss.").

In this case, Love has set forth specific factual allegations that Defendants acted in a joint and concerted manner in the underlying events. He alleges that no traffic violation had occurred, thus Miller and Rankin acted without any proper justification when stopping the Cadillac. In an effort to legitimize their vehicle stop, Miller and Rankin quickly called Sibley and his narcotics dog to the scene, an overt act in furtherance of the conspiracy to violated Plaintiff's Fourth Amendment rights. He further claims that, during the search of the vehicle, Rumgay "said to Defendant Miller, "[the narcotics are] in here, Craig, I got a

feeling," to which Defendant Miller replied, "I would hope so." Second Amend. Compl. ¶ 46. This exchange plausibly suggests the requisite 'meeting of the minds' through an expressed communication of a "conspiratorial objective." *Hinkle*, 81 F.3d at 421. Although an explicit agreement is not alleged, a Section 1983 conspiracy claim does not require such evidence. Moreover, Rumgay's allegedly false statements further demonstrate a concerted effort to support the alleged pretextual justifications for the vehicle stop, ensuing searches, and Plaintiff's detention.

At its core, Plaintiff's conspiracy claim "derives from one arrest, one place, and one time." *Hafner v. Brown*, 983 F.2d 570, 578 (4th Cir. 1992). The allegations of the Second Amended Complaint, considered together and liberally construed, "reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle*, 81 F.3d at 421. Defendants' respective Motions to Dismiss are thus DENIED as to Count Four.

## VI.    Qualified Immunity

Even if Plaintiff has stated a plausible claim for relief in each count, the Defendants contend that they are entitled to the protection of qualified immunity for any and all alleged constitutional violations.[9] As this Court has already considered, and rejected, Defendant Rumgay's argument for qualified immunity with respect to his alleged false statements, the present discussion will focus on Defendants' right to qualified immunity for Plaintiff's other claims.

---

[9] Generally, motions to dismiss pursuant to Rule 12(b)(6) address the legal sufficiency of a complaint rather than the existence of meritorious affirmative defenses; however, when the existence of such a meritorious defense—such as qualified immunity— is apparent on the face of the complaint, dismissal is appropriate. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013).  Thus, this Court will address the issue of qualified immunity by examining the allegations contained in the Second Amended Complaint.

Qualified immunity affords a government officers protection from suits for monetary damages when the officers have acted in good faith. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This brand of immunity is "an affirmative defense that shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (internal quotation marks omitted); *see also Harlow*, 457 U.S. at 818 (1982).  The doctrine is intended to apply to "gray areas, where the law is unsettled or murky," rather than situations where the government actors were "plainly incompetent or . . . knowingly violate[d] the law."  *Occupy Columbia*, 738 F.3d at 118.  Thus, qualified immunity shields government officials from § 1983 claims unless "(1) the allegations underlying the claim, if true, substantiate a violation of federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known."  *Id.*

Defendants claim that they are entitled to qualified immunity because Love fails to allege a violation of a clearly established constitutional right. Specifically, Defendants contend that the alleged searches and seizures were supported by the requisite reasonable suspicion or probable cause, and thus could not have violated the Fourth Amendment. Yet, this Court has noted *supra* that Love has adequately alleged that the initial seizure of the Cadillac, ensuing searches of the car and of his person, and his subsequent detention were not based upon probable cause. The probable cause requirement, however, "has been clearly established constitutional law for decades." *Harrison v. Prince William County Police Dept.*, 640

F. Supp. 2d 688, 702 (E.D. Va. 2009). Moreover, this Court is mindful that the qualified immunity issue is dependent on a fact-intensive inquiry better conducted after the parties have the opportunity to engage in discovery. Accordingly, at this stage in the proceedings, Defendants are not entitled to qualified immunity.

<u>CONCLUSION</u>

For the reasons stated above, Defendant Rumgay's Motion to Dismiss for Failure to State a Claim, or in the Alternative, Motion for Summary Judgment (ECF No. 74), construed as a Motion to Dismiss, is DENIED; Defendants Miller and Rankin's Motion to Dismiss for Failure to State a Claim (ECF No. 75) is DENIED; Defendant Sibley's Motion to Dismiss (ECF No. 77) is DENIED; Plaintiff's Motion for Leave to File Surreply in Opposition to Defendants Miller and Rankin's Motion to Dismiss (ECF No. 89) is GRANTED; and Plaintiff's Motion for Leave to File Surreply in Opposition to Defendant Rumgay's Motion to Dismiss (ECF No. 90) is GRANTED. In sum, Plaintiff has sufficiently alleged that Defendants violated his Fourth Amendment and Fourteenth Amendment rights to be free from unreasonable searches and seizures, as well as excessive force. At this early stage in the proceedings, Defendants have not yet demonstrated any entitlement to qualified immunity for their alleged actions. All counts thus remain pending against the Defendants. Discovery and pretrial dispositive motions will proceed per the parties' Joint Motion to Modify Scheduling Order (ECF No. 92).

A separate Order follows.


Dated: March 15, 2016                    /s/
                                         Richard D. Bennett
                                         United States District Judge